**GENERAL MILLS, INC.,**
Plaintiff–Appellant,

v.

**HUNT–WESSON, INC., Defendant–**
Appellee.

No. 96–1238.

United States Court of Appeals,
Federal Circuit.

Jan. 9, 1997.

Steven B. Pokotilow, Stroock & Stroock & Lavan, of New York, New York, argued for plaintiff-appellant. With him on the brief were Mark P. Kesslen and Andrew G. Isztwan.

Robert A. Schroeder, Pretty, Schroeder, Brueggemann & Clark, of Los Angeles, CA, argued for defendant-appellee. With him on the brief was J. Christopher James.

Before ARCHER, Chief Judge, FRIEDMAN, Senior Circuit Judge, and RADER, Circuit Judge.

Opinion for the court filed by Chief Judge ARCHER. Circuit Judge RADER dissents without separate opinion.

ARCHER, Chief Judge.

General Mills, Inc. (General Mills) appeals from a January 22, 1996, order of the United States District Court for the District of Minnesota, Case No. 95–CV–98, granting summary judgment in favor of Hunt–Wesson, Inc. (Hunt–Wesson), holding that Hunt–Wesson did not infringe claims 1 and 7 of U.S. Patent No. 4,267,420 (the '420 patent). We affirm.

## BACKGROUND

On May 12, 1981, the '420 patent issued to William A. Brastad, who assigned it to General Mills. The '420 patent discloses and claims a food item intended to be heated in a microwave oven in combination with a flexible packaging designed to cover the food item to promote a change in color or crispness of the surface of the food item in the presence of microwave energy. Claims 1 and 7, the only independent claims of the '420 patent, are at issue. Claim 1, with the limitations at issue underscored, provides:

1. In combination with *a food item capable of having its color changed or being crispened by thermal energy,* said food item to be heated in a microwave oven, wrapping material conforming generally to the shape of said food item comprising a flexible dielectric substrate having *a thin semiconducting coating thereon residing in a close proximal relation to a substantial surface portion of said food item,* said thin semiconducting coating having the property of being able to convert a proportion of the microwave energy of a microwave oven into heat in the coating itself *to thereby change the color or crispness of the surface of the food item* while permitting the remainder of the said microwave energy to pass through the wrapping material to dielectrically heat the food item.

Claim 1 is representative of the '420 patent claims. The portion of claim 7, however,

corresponding to the second set of limitations underscored in claim 1 above, reads:

> a relatively thin flexible layer of metal carried by said dielectric material, said metallic layer also conforming generally to the shape of said food item and residing in a proximal relation thereto....

Hunt–Wesson produces and sells "Orville Redenbacher" brand microwaveable popcorn. Hunt–Wesson's microwaveable popcorn is prepackaged in a microwaveable bag designed to contain the popcorn while it cooks. Prior to popping, the popcorn is enveloped by the microwaveable bag and exists in a cake consisting of popcorn kernels, oil, and seasonings (popcorn slurry).

The Hunt–Wesson microwaveable bag consists of an outer layer of paper, an inner layer of paper, and a thin metallic coating (susceptor) laminated therebetween. The susceptor resides in a portion of one side of the Hunt–Wesson bag.

General Mills instituted an action alleging infringement of the '420 patent claims by Hunt–Wesson's "Orville Redenbacher" microwaveable popcorn product. Hunt–Wesson filed a motion for summary judgment on the ground that its microwaveable popcorn product does not infringe the '420 patent claims. In response, General Mills filed a motion for partial summary judgment alleging that the "food item" of claims 1 and 7 of the '420 patent encompasses popcorn. The district court granted summary judgment in favor of Hunt–Wesson, concluding that, as a matter of law, claims 1 and 7 of the '420 patent are not infringed.

The district court concluded that claims 1 and 7 are not literally infringed because popcorn is not a food item encompassed by the '420 patent and the structural limitations set forth in the claims are not met by the physical characteristics of Hunt–Wesson's microwaveable popcorn product. Regarding the doctrine of equivalents, the district court noted that General Mills failed to proffer evidence creating a factual dispute as to whether certain limitations not met literally are met equivalently by Hunt–Wesson's microwaveable popcorn product.

On appeal, General Mills contends that the district court erred, as a matter of law, by: (1) failing to conclude that popcorn is a food item encompassed by claims 1 and 7 of the '420 patent; (2) granting summary judgment on literal infringement because there are genuine issues of material fact concerning the physical characteristics of Hunt–Wesson's "Orville Redenbacher" microwaveable popcorn products; and (3) improperly resolving questions of fact concerning the doctrine of equivalents in granting summary judgment.

## DISCUSSION

### I. Summary Judgment

■ This Court reviews *de novo* a district court's grant of summary judgment. *See Avia Group Int'l, Inc. v. L.A. Gear California, Inc.,* 853 F.2d 1557, 1561, 7 USPQ2d 1548, 1551 (Fed.Cir.1988).

According to the standard set forth in Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when:

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

*See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A material fact is one that may affect the decision, so that the finding of that fact is relevant and necessary to the proceedings. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the nonmoving party. *Id.* The evidence submitted by the nonmovant in opposition to a motion for summary judgment "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255, 106 S.Ct. at 2513 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)).

■ We conclude that the district court properly granted summary judgment in this

case. Although the district court's analysis may not have been perfect throughout, we review judgments, not opinions. *Chemical Eng'g Corp. v. Essef Indus., Inc.,* 795 F.2d 1565, 1572, 230 USPQ 385, 390 (Fed.Cir.1986) (citing *Fromson v. Advance Offset Plate, Inc.,* 755 F.2d 1549, 1556, 225 USPQ 26, 31 (Fed.Cir.1985)). General Mills has not identified a material factual dispute related to the issue of infringement; the controlling issue, therefore, regarding infringement in this case is one of law. Moreover, the district court did not improperly fail to conclude that popcorn is a food item encompassed by claims 1 and 7 of the '420 patent as a matter of law.

## II. Literal Infringement

■ An infringement analysis entails two steps: (1) the claims must be construed; and (2) the properly construed claims must be compared to the allegedly infringing device. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976, 34 USPQ2d 1321, 1326 (Fed.Cir.1995), *aff'd,* —— U.S. ——, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Claim construction is a question of law that we review *de novo. Id.* at 979, 34 USPQ2d at 1329.

■ To ascertain the meaning of, or construe, patent claims, the intrinsic evidence of record should be considered first, *i.e.,* the patent itself, including the claims, the specification, and the prosecution history. *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582, 39 USPQ2d 1573, 1576 (Fed.Cir.1996); *Markman,* 52 F.3d at 979, 34 USPQ2d at 1329.

■ Literal infringement requires that every limitation of the patent claim be found in the accused infringing device. *Read Corp. v. Portec, Inc.,* 970 F.2d 816, 821, 23 USPQ2d 1426, 1432 (Fed.Cir.1992). The literal infringement determination, whether properly construed claims read onto an accused product or method, is a question of fact. *Charles Greiner & Co., Inc. v. Mari-Med Mfg., Inc.,* 962 F.2d 1031, 1034, 22 USPQ2d 1526, 1528 (Fed.Cir.1992).

■ The district court concluded that popcorn is not a food item that meets the color and crispness limitations set forth in claims 1 and 7 of the '420 patent, and thus, that Hunt–Wesson's microwaveable popcorn product does not infringe claims 1 and 7 as a matter of law. In light of the specification and the prosecution history, the district court construed the color and crispness limitations of claims 1 and 7, which read "[i]n combination with a food item capable of having its color changed or being crispened by thermal energy," as including only those foods normally expected to change color or crispness by thermal energy. Popcorn, the district court found, is not such a food item.

General Mills asserts that the district court erred by failing to conclude that popcorn is a food item covered by claims 1 and 7 of the '420 patent as a matter of law. Pointing to a limitation set forth in both claims providing "to thereby change the color or crispness of the surface of the food item," General Mills contends that only the surface of the food item need change color or crispness to be encompassed by claims 1 and 7. According to General Mills, by ignoring that limitation the district court improperly concluded that popcorn is not covered by claims 1 and 7 as a matter of law.

We do not agree. Considering claims 1 and 7 in their entirety and the intrinsic evidence of record, we conclude that the limitations associated with the food item require a food item, in its final form, capable of having a substantial portion, in the case of claim 1, or almost the entire portion, in the case of claim 7, of its surface change color or crispness in the presence of heat.

On its face, claim 1 encompasses only those food items capable of having a substantial surface portion change color or crispness in the presence of heat. Claim 1 requires that the susceptor reside "in a close proximal relation to a substantial surface portion of said food item." The claim also requires "[a susceptor] having the property of being able to convert a proportion of the microwave energy of a microwave oven into heat to thereby change the color or crispness of the surface of the food item." Since the claim requires a susceptor residing in close proximal relation to a substantial portion of the surface of the food item, a substantial portion

of the surface of the food item must have the capability of changing color or crispness.

Similarly, claim 7 encompasses only those food items capable of having almost their entire surface portion change color or crispness in the presence of heat. Claim 7 requires that the "[susceptor] conform generally to the shape of said food item and resid[e] in a proximal relation [to the food item]." Accordingly, claim 7 requires a susceptor that must reside in close proximal relation and conform generally to, or envelope, the food item; therefore, almost the entire surface of the food item must have the capability of changing color or crispness.

In view of the specification, the color and crispness limitations associated with the food item set forth in claims 1 and 7 must be interpreted to apply to a food item in its final form. Throughout the specification, the enhancement of the appearance and taste of the food item is referred to as a consequence of the invention. For example, in addressing the failures of the prior art, the specification provides:

> The heating of food articles with microwave energy has now become commonplace. It is widely recognized, however, that the molecular friction resulting from the high frequency oscillation fails to impart the proper amount of so-called browning and/or crispness to foods normally expected to possess such a quality. Consequently, foods of the foregoing type, after being heated or cooked in a microwave oven, do not possess the requisite degree of eye appeal and taste appeal that one normally expects.

The enhancement of taste and appearance of the food item suggests that claims 1 and 7 apply to a food item in its final form; naturally, taste and appearance of previously heated or cooked food items refer to the state of a food item after it has been cooked, before it is eaten.

Popcorn is not a food item encompassed by claims 1 and 7 as a matter of law. A substantial surface portion of popcorn, in its final popped form, is not capable of changing color or crispness when subjected to heat during the normal cooking process. A brief explanation of the cooking process of a popcorn kernel will illustrate this point.

Unlike most foods, when cooked, popcorn undergoes a transformation in form. Prior to popping, a corn kernel is a hard, essentially inedible pellet. An unpopped corn kernel is generally comprised of a pericarp, endosperm containing floury and horny portions, and germ. The pericarp is a tough protective outer skin that surrounds and contains the endosperm and germ. When heat is applied to an uncooked kernel, moisture in the horny endosperm, which comprises millions of closely arranged cells containing starch and moisture, is "superheated." The superheated moisture remains confined by the pericarp, which acts like a pressure chamber, until internal pressure, created by superheating the moisture, exceeds the strength of the pericarp and the pericarp ruptures. Once the pericarp is ruptured, the kernel dramatically changes form; the superheated moisture is released and vaporized, causing the starch to instantly gelatinize and expand into puffed popped corn. Once popped, the surface of the puffed popped corn does not change color or crispness during the normal cooking process.

In support of its assertion that, as a matter of law, popcorn is a food item encompassed by claims 1 and 7 of the '420 patent, General Mills submitted evidence, in the form of affidavits, tending to show that during the cooking process the pericarp of an unpopped kernel of corn undergoes a change in color and crispness. General Mills also submitted evidence showing that once a kernel pops, the previously browned pericarp attaches to portions of the surface of puffed popped corn. This evidence, however, does not show that popcorn is a food item encompassed by the '420 patent as a matter of law, nor does it raise a material question of fact as to whether popcorn is such a "food item."

The color and crispness limitations of claims 1 and 7 of the '420 patent apply to a food item in its final state. General Mills' evidence is largely directed to the initial stages of the cooking process of a popcorn kernel, before the kernel pops and transforms into puffed popped corn. As General Mills has attempted to show, the pericarp,

which is the surface of the unpopped kernel during a portion of the kernel's cooking process, may undergo a change in color and crispness while the contained horny endosperm superheats. General Mills' evidence, however, is misdirected; its evidence is not directed to popcorn in its final state. Additionally, General Mills' evidence that, after popping, previously-browned pericarp attaches to portions of the puffed popcorn and arguably results in a change of color and crispness of the final stage of a cooked corn kernel, does not create a genuine issue of material fact. To the extent that previously-browned pericarp attaches to portions of the surface of a popped corn kernel, General Mills has not submitted evidence tending to show that any resulting change in color or crispness encompasses almost the entire or a substantial portion of the surface of a popped corn kernel.

Alternatively supporting its conclusion of literal noninfringement, the district court also concluded that the undisputed physical characteristics of the Hunt–Wesson bag do not meet the structural limitations of claims 1 and 7 of the '420 patent.

General Mills asserts that the district court erred in granting summary judgment of literal noninfringement with respect to the structural limitations of claims 1 and 7. General Mills argues that the district court improperly resolved genuine issues of material fact, did not consider claims 1 and 7 separately, and misconstrued various structural limitations of claims 1 and 7.

First, to support its contention that the district court improperly resolved genuine issues of fact, General Mills cites *Modine Manufacturing Co. v. United States International Trade Commission*, 75 F.3d 1545, 37 USPQ2d 1609 (Fed.Cir.1996), contending that the interpretation of "broadening usages," *i.e.*, "substantial surface portion," "close proximal relation," and "conforming generally to the shape of," is a question of fact. ■ General Mills has misread *Modine*. Where the parties do not dispute any relevant facts regarding the accused product, in this case the physical characteristics of the Hunt–Wesson bag, but disagree over possible claim interpretations, the question of literal infringement collapses into claim construction and is amenable to summary judgment. *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1578, 37 USPQ2d 1365, 1370 (Fed.Cir.1996). In *Modine*, we did not declare that the interpretation of broadening usages is a question of fact. We concluded that an International Trade Commission (Commission) finding of noninfringement was based upon an incorrect interpretation of the limitation at issue. *Modine*, 75 F.3d at 1554–55, 37 USPQ2d at 1615. In accordance with our conclusion, we vacated and remanded for a determination, in light of a proper interpretation considering intrinsic evidence not previously considered by the Commission, of whether any of several accused devices infringed upon the claims containing the limitation at issue. *Id.* at 1555, 37 USPQ2d at 1615.

■ Second, assuming *arguendo*, that the district court did not consider claims 1 and 7 separately, we are not persuaded that the district court erred in concluding that the undisputed physical characteristics of the Hunt–Wesson bag do not meet the structural limitations set forth in claims 1 and 7 of the '420 patent. Considering claim 1 in its entirety and the intrinsic evidence of record, we conclude that claim 1 requires a susceptor that resides closely adjacent to the surface of a food item throughout the entire cooking process and envelopes a very large portion of the food item's surface.

On its face, claim 1 requires "a flexible dielectric substrate having a [susceptor] thereon residing in a close proximal relation to a substantial surface portion of said food item." To construe the terms "close proximal relation" and "substantial surface portion," we look to the intrinsic evidence.

The specification discloses food items, *i.e.*, a fish stick, potatoes, and onion rings, wrapped in a manner such that the susceptor, which coats dielectric wrapping material, remains adjacent to the surface of the food item throughout the cooking process. Consequently, "residing in a close proximal relation to ... said food item," as utilized in claim 1, refers to a positional relationship between the susceptor and food item in

which the susceptor remains closely adjacent to the food item throughout the cooking process.

The food item depicted in the specification, a fish stick, is completely wrapped with dielectric material. The susceptor, as disclosed and represented in the drawings, coats the entire inner surface of the dielectric material and envelopes the entire surface of the food item. Consequently, "a substantial surface portion of said food item" refers to a positional relationship between the susceptor and the food item in which the susceptor envelops a very large portion of the surface of the food item. The prosecution history also leads us to such an interpretation. While prosecuting claims 1 and 7 to allowance, General Mills distinguished its invention over a rigid dish containing a susceptor disposed thereon by maintaining that its invention can be wrapped for direct heat transfer in a manner previously unattainable due to the inflexibility of prior art susceptors.

■ Similarly, considering claim 7 in its entirety and the intrinsic evidence of record, we conclude that claim 7 requires a susceptor that resides proximally adjacent to the surface of a food item throughout the entire cooking process and conforms to almost the entire surface of the food item.

Claim 7 requires "[a susceptor] conforming generally to the shape of said food item and residing in a proximal relation thereto." The "conforming generally to the shape of said food item" phrase must be construed as generally enveloping the food item to take the shape of the food item's exterior, conforming to almost the entire surface of the food item. The specification leads to that construction. Where the surface topology of a food item makes it difficult to dispose a susceptor adjacent to the entire surface of the food item, such as in the case of onion rings and certain forms of potatoes, the susceptor may generally envelope the surface of the food item.

■ The physical characteristics of the Hunt–Wesson microwaveable bag do not meet the structural limitations set forth in properly construed claims 1 and 7. First, the susceptor of the Hunt–Wesson bag neither envelopes a very large portion of the surface

of the popcorn slurry nor conforms to almost the entire surface of the popcorn slurry.

The physical characteristics of the Hunt–Wesson bag are undisputed. The Hunt–Wesson bag includes two rectangular sides, each dimensioned 11.5 by 6 inches, and inwardly folded gusseted side panels. The bag is folded into three sections, forming a middle section approximately 4.5 inches in length and 6 inches in width, and two end sections, each approximately 3.5 inches in length and 6 inches wide. A susceptor is centered on one side of the middle section of the Hunt–Wesson bag, with a portion of the susceptor, approximately 0.9 inches, extending into the two end sections. Prior to cooking, the popcorn slurry resides in the middle section, resting on top of the susceptor. Consequently, prior to cooking, the Hunt–Wesson susceptor lies beneath the popcorn slurry and covers about 0.9 by 6 inches of the top of the popcorn slurry, leaving a large part of the top surface of the popcorn slurry uncovered.

Moreover, assuming that the Hunt–Wesson susceptor is initially positioned closely or proximally adjacent to the popcorn slurry, the Hunt–Wesson susceptor does not remain closely or proximally adjacent to the popcorn throughout the entire cooking process. Once microwave energy is applied to the Hunt–Wesson microwaveable popcorn product and the cooking process begins, the Hunt–Wesson bag expands and popcorn kernels contained therein begin to pop and move in an upward direction away from the susceptor.

Thus, the Hunt–Wesson microwaveable bag does not meet the structural limitations of the claims.

## III. Doctrine of Equivalents

■ The doctrine of equivalents enables a patent owner to prove infringement, despite a lack of literal infringement, where the differences between the claimed product and the accused product are insubstantial. *Hilton Davis Chem. Co. v. Warner–Jenkinson Co.*, 62 F.3d 1512, 1521–22, 35 USPQ2d 1641, 1648 (Fed.Cir.1995), *cert. granted*, —— U.S. ——, 116 S.Ct. 1014, 134 L.Ed.2d 95 (1996). An infringement determination under the doctrine of equivalents is a question of fact. *Id.* at 1520, 35 USPQ2d at 1647.

General Mills contends that the district court erred in granting summary judgment of noninfringement under the doctrine of equivalents because the district court erroneously concluded that popcorn is not a food item encompassed by the '420 patent.

■ The district court did not err in granting summary judgment of noninfringement under the doctrine of equivalents. The district court correctly concluded that popcorn is not a food item encompassed by the '420 patent. With respect to infringement under the doctrine of equivalents, General Mills had a duty to submit evidence tending to show equivalence with respect to limitations not literally met by the accused infringing device. *Intellicall, Inc. v. Phonometrics, Inc.,* 952 F.2d 1384, 1389, 21 USPQ2d 1383, 1387–88 (Fed.Cir.1992). General Mills has not proffered material evidence designed to establish equivalence with respect to limitations of the '420 patent not literally satisfied by the Hunt–Wesson microwaveable popcorn product.

## CONCLUSION

Accordingly, we affirm the grant of summary judgment.

*AFFIRMED.*