**DISPLAY SOLUTIONS, INC., Plaintiff,**

v.

**DAKTRONICS, INC., Federal Sign Division of Federal Signal Corporation, Defendants.**

No. Civ.A. 1:95–CV–1099–TWT.

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 5, 1997.

Allen D. Brufsky, Scott D. Wofsy, Cummings & Lockwood, Stamford, CT, for Display Solutions, Inc.

Brent J. Kaplan, Robins Kaplan Miller & Ciresi, Atlanta, GA, Ronald J. Schutz, Damon L. Ward, Darren B. Schwiebert, Robins Kaplan Miller & Ciresi, Minneapolis, MN, for Daktronics, Inc.

Brent J. Kaplan, Robins Kaplan Miller & Ciresi, Atlanta, GA, Ronald J. Schutz, Robins Kaplan Miller & Ciresi, Minneapolis, MN, for Federal Sign.

## ORDER

THRASH, District Judge.

This matter comes before he Court on (1) the Plaintiff's Motions to Compel the Defendants' Response to a Request for Admissions of Facts and for Sanctions [Doc. No. 35]; (2) the Defendants' Motion for Summary Judgment [Doc. No. 38]; (3) the Plaintiff's Cross–Motion for Summary Judgment [Doc. No. 44]; and (4) the Defendants' Motion to Strike the Plaintiff's Cross–Motion as Untimely [Doc. No. 46].

## I. BACKGROUND

On January 7, 1988, America Sign & Indicator Corporation (hereinafter referred to as "ASIC") filed a patent application relating to a matrix lamp bank display and light filtering assembly, useful for presenting patterns of lighted and unlighted matrix displays commonly referred to as "electronic billboards." ASIC filed the application on behalf of one of its employees, Ira Britt. Subsequently, patent no. 4,843,527 ("the 527 patent") was issued to ASIC as Britt's assignee. In 1994, ASIC assigned the patent to Plaintiff Display Solutions, Inc. The 527 patent consists of 25 claims directed to (1) a matrix lamp bank display for presenting the desired pattern of light (Claims 1–12); and (2) a light filtering assembly usable in front of the display (Claims 13–25). Claims 1 and 13 are independent claims while the remainder of the claims are dependent on Claims 1 and 13.

Defendant Daktronics, Inc. (hereinafter referred to as "Daktronics") manufactures and sells several different matrix lamp bank dis-

Gary Devon Stokes, Lamberth Bonapfel Cifelli & Stokes, Atlanta, GA, Barry Kramer,

play systems. Specifically, Daktronics manufactures (1) a 3/4" center-to-center system ("3/4" product"), (2) a 1" center-to-center system ("1" product"); (3) a 1½" center-to-center system ("1½" product"); (4) 2½" center-to-center system ("2½" product";); (5) a 3" center-to-center system ("3" product"); and (6) a 3½" center-to-center system ("3½" product").

In 1995, Plaintiff filed this patent infringement complaint against Daktronics and the Federal Sign Division of Federal Signal Corporation (hereinafter referred to as "Federal Signal"). In the complaint, Plaintiff asserts that Daktronics is infringing the 527 patent by manufacturing, offering to sell, and selling matrix lamp displays that employ the patented invention. Plaintiff asserts that Federal Signal is infringing the patent by purchasing signs from Daktronics that utilize the patented invention and by selling, leasing, and installing the signs with the assistance of Daktronics. The Defendants have filed a Counterclaim under the Declaratory Judgment Act and seek a judgment that the Daktronics products do not infringe the 527 patent and that the patent is invalid and unenforceable.

The Defendants filed a Motion for Summary Judgment, contending that their light display systems do not literally infringe every claim limitation in Claims 1 and 13 of the 527 patent. They further contend that there is no infringement under the doctrine of equivalents because the differences between their products and the claim limitations in Claims 1 and 13 are not insubstantial. Finally, they contend that the 527 patent is invalid because the patented invention was offered for sale more than one year before the January 7, 1988, patent-application date. Plaintiff filed a Cross–Motion for Summary Judgment, contending that each Daktronics product literally infringes Claims 1–4, 7, and 9–10 of the 527 patent. Further, Plaintiff contends that it is entitled to summary judgment as to the Defendants' patent invalidity claim because the patented invention was not "on-sale" more than one year before January 7, 1988.

▪ Plaintiff also has filed Motions to Compel the Defendants to Respond to Requests for Admissions of Fact and for Sanctions. However, Plaintiff's Motion to Compel fails to comply with Fed.R.Civ.P. 37 and Local Rule 37.1. Plaintiff has failed to (1) "quote verbatim" each request for admission and response to which objection is taken; (2) state the specific objection; and (3) cite controlling authority in support of its objections. See Local Rule 37.1. Further, while Plaintiff has included correspondence between the parties regarding the request for admissions, it has not included a statement certifying that it has in good faith conferred with the Defendants regarding the discovery dispute. See id.; Fed.R.Civ.P. 37(a)(2)(B). Accordingly, the Motions to Compel and for Sanctions are denied.

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The evidence and any inferences that may be drawn should be viewed in the light most favorable to the nonmovant. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 158–159, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The party seeking summary judgment must first identify grounds that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

## III. DISCUSSION

### A. *VALIDITY OF THE 527 PATENT*

▪ Under 35 U.S.C. § 102(b), a patent is invalid if the inventor placed the claimed invention "in public use or on sale in this country more than one year prior to the date of the application for patent in the United States." The party asserting the bar must demonstrate by clear and convincing evidence that "there was a definite sale or offer to sell more than one year before the applica-

tion for the subject patent, and that the subject matter of the sale or offer to sell fully anticipated the claimed invention or would have rendered the claimed invention obvious by its addition to the prior art." *UMC Electronics Co. v. United States,* 816 F.2d 647, 656 (Fed.Cir.1987). Whether a device has been placed on sale depends on the totality of the circumstances and is not subject to a mechanical rule. *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation,* 71 F.3d 1573, 1577 (Fed.Cir.1995). This determination is a question of law, based on the underlying facts. *UMC Electronics,* 816 F.2d at 657.

■ The parties agree that the application date for the 527 patent was January 7, 1988 and that the critical date for determining invalidity of the patent is therefore January 7, 1987. The parties also agree that (1) ASIC entered into a "Donation and Use Agreement" in October, 1986 with Six Flags over Texas regarding the installation of a display system at Six Flags; and (2) a display system containing the patented technology was installed sometime after March, 1997. However, after careful review of the evidence presented, there are genuine issues of material fact as to whether the Donation and Use Agreement constituted an offer to sell the patented technology and whether the patented technology was even contemplated in that agreement. Consequently, neither Plaintiff nor Defendants are entitled to summary judgment regarding the validity of the 527 patent.

### B. *LITERAL INFRINGEMENT*

■ Literal infringement requires that every limitation of the patent claim be found in the infringing device. *See General Mills, Inc. v. Hunt–Wesson, Inc.,* 103 F.3d 978, 981 (Fed.Cir.1997). A dependent claim cannot be infringed if the independent claim on which it depends is not infringed. *Wahpeton Canvas Co., Inc. v. Frontier, Inc.,* 870 F.2d 1546, 1552 n. 9 (Fed.Cir.1989). To read claim limitations expressed in means-plus-function terms on an accused device, that device must employ means identical to or the equivalent of the structures, material, or acts described in the patent specification. *See* 35 U.S.C. § 112, ¶ 6; *Valmont Industries, Inc. v. Reinke Mfg. Co., Inc.,* 983 F.2d 1039, 1042

(Fed.Cir.1993). Whether properly construed claims read onto an accused device is a question of fact. *General Mills,* 103 F.3d at 981.

■ A literal infringement analysis consists of two steps: (1) the claims must be construed; and (2) the properly construed claims must be compared to the allegedly infringing device. *See General Mills,* 103 F.3d 978, 981 (Fed.Cir.1997). Claim construction is a matter of law within the province of the court. *Id.* To ascertain the meaning of, or construe, patent claims, the intrinsic evidence of record should be considered first. *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed.Cir.1996). This consists of the patent itself, the claim, the specification, and the prosecution history. *Id.* The intrinsic evidence "is the most significant source of the legally operative meaning of disputed claim language" and reliance upon extrinsic evidence is improper where the intrinsic evidence unambiguously describes the scope of the patented invention. *Id.* at 1582–83.

Claim 1 discloses a matrix lamp bank display for presenting a desired two dimensional pattern of lighted or unlighted sources to a viewer. (*See* Doc. 38, Shultz Aff. at ¶ 2, the 527 patent at col. 6, lines 35–37). While this claim contains several limitations, the Court will focus on and construe the following two limitations: (1) "an individual solid lens covering the front of one light sources, each lens being individually inclined at an angle extending forwardly and upwardly from the planar array of light sources;" and (2) "the individual frame means each including a ventilated top wall extending rearwardly from the lens surrounded thereby."

■ With regard to the construction of the first limitation, the specification reflects that each individual solid lens is at an angle and not parallel with the planar array of light sources. (*See id.* at col. 3, lines 50–53). The pictures and description in the specification further show that the entire front face, rather than a portion, of the individual solid lens is at an inclined angle. (*See id.,* 527 patent). The prosecution history provides support for the notion that a lens parallel to the planar array of light sources is not encompassed within this claim limitation. (*Id.,* Shultz Aff.

at Exh. H, Britt's Response to the Patent & Trademark Office). Accordingly, after reviewing the intrinsic record, the Court construes the first limitation as encompassing the entire front face of the individual solid lens inclined at an angle extending forwardly and upwardly from the planar array of light sources.

█ The specifications clearly provide for the construction of the second limitation. It states that in the first embodiment of the patented device, "[t]he top wall ... is provided with a series of ventilation apertures for permitting air heated by a lamp ... to pass upwardly behind the lens ... and exit through the top wall ... as the heated air rises." (*See* Doc. 38, Shultz Aff. at ¶ 2, the 527 patent at col. 4, lines 8–10). In the second embodiment, "[v]entilating slots are formed through the top wall." (*See id.* at col. 5, lines 41–42). The prosecution history lends support to this construction where Britt stated in his patent application that "tilting of the individual lenses at an inclined angle relative to the array of light sources provides the advantage of individually venting each lens through the top wall of its surrounding frame." (*Id.*, Shultz Aff. at Exh. H, Britt's Response to the Patent & Trademark Office).

█ The Court finds that Daktronics' products do not infringe upon the 527 patent because each product does not contain both of the limitations construed above. The 3/4" product, 3" product, and 3½" product each contain a front lens face that is parallel to the planar array of light sources. Although a portion of these lenses are inclined forwardly and upwardly from the light sources, a larger portion of the lens remains parallel. The 1" product, 1½" product, and 2½" product do not contain a frame means having a "ventilated front wall extending rearwardly from the lens surrounded thereby." The 1" product contains a screwdriver notch at the top. However, this notch does not extend rearwardly from the lens and is not intended as the ventilation means of the device. The 1½" and 2½" products do not include a top wall. Therefore, they do not include a ventilation aperture extending rearwardly from the lens. Finally, a review of these products reveals that they do not include the same or equivalent structure as that disclosed in the specification.

In arguing that Daktronics' products infringe upon the 527 patent, Display Solutions relies extensively on extrinsic sources, including the testimony of Vernon Voelzke, Vice–President of Engineering for Daktronics. However, reliance on such extrinsic evidence is improper where the construction of disputed claims terms can be gleaned from the unambiguous, intrinsic evidence. *Vitronics Corp.*, 90 F.3d at 1582–83. Further, there is nothing in the record to show that such expert testimony was based on the Court's construction of the limitation terms discussed above. Accordingly, in the absence of a genuine issue of material fact, the Court concludes that none of Daktronics' products infringe Claim 1 of the 527 patent.

The Defendants have further presented evidence establishing that Daktronics' products do not infringe Claim 13 of the 527 patent. Plaintiff has presented no evidence to create a genuine issue of material fact as to infringement on Claim 13, contending simply that it is not bringing claims against the Defendants as to Claim 13. Nevertheless, Plaintiff's complaint is not limited to any particular claim of the 527 patent, and the Defendants have filed a Counterclaim seeking a Declaratory Judgment of Noninfringement. Accordingly, in the absence of a genuine issue of material fact, the Court further concludes that none of Daktronics' products infringe Claim 13 of the 527 patent.

### C. DOCTRINE OF EQUIVALENTS

█ The doctrine of equivalents enables a patent owner to prove infringement, despite a lack of literal infringement, where the differences between the claimed product and the accused product are insubstantial. *General Mills*, 103 F.3d at 984. This determination is a question of fact. *Id.* at 984–85. Here, Plaintiff had a duty to submit evidence tending to show equivalence with respect to limitations not literally met by Daktronics' products. Plaintiff failed to do so, and the Defendants are entitled to summary judgment of noninfringement under the doctrine of equivalents. *See General Mills*, 103 F.3d at 985.

## IV. SUMMARY

Accordingly, the Court concludes that, in the absence of any genuine issues of material fact, the Defendants are entitled to summary judgment as to whether any of Daktronics' products infringe the 527 patent. Because resolution of this issue is dispositive of this action, the Defendants' Motion for Summary Judgment [Doc. No. 38] is GRANTED; Plaintiff's Motion for Summary Judgment [Doc. No. 44] is DENIED; and a Declaratory Judgment is entered in favor of the Defendants that the Defendants have not infringed upon any claims in the 527 patent. Plaintiff's Motions to Compel and for Sanctions [Doc. No. 35] are DENIED. Finally, the Defendants' Motion to Strike Display Solutions' Motion for Summary Judgment as Untimely Filed [Doc. No. 46] is DENIED as moot. Because this Order resolves this action, the clerk is directed to enter judgment in favor of the Defendants and close this case.