**TURN–KEY–TECH, LLC,**
Plaintiff–Appellant,

v.

**NATIONAL FILM LABORATORY, INC. (doing business as Crest National Optical Media), Music City Optical Media, Inc., Hollywood Records, Inc., Concord Disc Manufacturing Corp., Krauss Maffei Corporation, and Krauss Maffei Kunststofftechnik Gmbh, Defendants–Appellees.**

Nos. 02–1613, 02–1614, 02–1615, 02–1616.

United States Court of Appeals,
Federal Circuit.

Sept. 8, 2003.

Rehearing Denied Oct. 6, 2003.

Before MAYER, Chief Judge, BRYSON, and LINN, Circuit Judges.

LINN, Circuit Judge.

Turn–Key–Tech, LLC ("Turn–Key") appeals from decisions of the United States

District Court for the Central District of California, which granted summary judgment in favor of all named defendant manufacturers and sellers of injection mold systems, holding that the accused systems do not utilize the process claimed in U.S. Patent No. 4,422,998 ("the '998 patent"). We *affirm*.

I

The '998 patent is directed to a controlled ejection method for injection molding. Claims 1 and 2 provide:

1. A method of cyclic injection molding of plastic where the mold comprises two parts which are separated by a parting surface and at least one cavity situated internally to the boundaries of the parting surface, and wherein each production cycle comprises the steps of:

(a) Combining the two mold parts by moving, in a predetermined direction, the mold parts in relation to each other;

(b) Injecting plastic in a fluid state into a cavity situated within the parting surface;

(c) Solidifying the injected plastic in the cavity, thereby creating a plastic product;

(d) Separating the two mold parts by moving, in a direction opposite to the predetermined direction, said mold parts in relation to each other to create a substantially enclosed guide conduit having contours defined by the regions of the parting surface and the internally positional cavity/ies that are exposed subsequent to separation and leading in a direction substantially perpendicular to said predetermined direction;

(e) Ejecting the plastic product into said guide conduit; and

(f) Guiding and transporting the ejected product from between the mold parts through the guide conduit.

2. A method according to claim 1, wherein step (f) comprises the step of:

(g) Transporting the ejected product through the guide conduit at an orientation directed by the contours of the guide conduit.

'998 patent, col. 5, l. 27–col. 6, l. 21.

Defendant Kraus Maffei Corp. manufactures and sells an injection molding machine with a mold set ("CD–94 mold") designed to manufacture an optical disc. The other defendants use that machine to manufacture CDs and DVDs. The district court described in its opinion the composition and operation of the CD–94 mold, and none of the parties raises any disputed issues of material fact regarding the district court's description of the device used to perform the accused process.

■ The primary dispute in this case focuses on the construction of the term "guide conduit" found in limitation (d) of claim 1. In such cases, "[w]here the parties do not dispute any relevant facts regarding the accused product ... but disagree over possible claim interpretations, the question of literal infringement collapses into claim construction and is amenable to summary judgment." *General Mills, Inc. v. Hunt–Wesson, Inc.*, 103 F.3d 978, 983 (Fed.Cir. 1997) (citing *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1578 (Fed. Cir.1996)). In its claim construction ruling, the district held that the "substantially enclosed guide conduit" is "a tube or channel that is almost entirely closed in from the outside environment, and that carries materials from one place to another and that helps to direct the materials' progressive motion." The district court later clarified its claim construction, holding that "the guide conduit itself nevertheless must help to carry and direct the molded product's progressive motion." Based on that modified construction, the district court granted defendants' motions for summary

judgment of non-infringement, concluding that the guide rails, kicker plate, and discharge chute of the CD–94 mold do not comprise a guide conduit as construed by the court.

We hold that the district court erred in its interpretation of guide conduit. A review of the claim language, written description, and prosecution history show that a guide conduit is simply a passageway through which a plastic product is moved. The plain language of the claims describes the guide conduit as an area within the mold. The district court's definition attributes a function to the guide conduit, namely that it direct the material's motion. That is an added limitation not found in the claim language or properly imposed by the intrinsic record.

■ Even though the district court unduly narrowed the guide conduit limitation, summary judgment of non-infringement is nonetheless appropriate in this case because under the correct claim construction, the CD–94 mold still does not have a guide conduit as defined by the claims. *See Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1316 (Fed.Cir.1999) (affirming grant of summary judgment of non-infringement despite district court's unduly narrow claim construction). Because the CD–94 mold lacks a guide conduit, the defendant manufacturers and users of the CD–94 mold do not practice the claimed method of injection molding. To the extent that there is a passageway through which a plastic product is moved, that passageway is not formed by "[s]eparating the two mold parts" as required by the claims. The cavity created by the separation of the mold parts is not a guide conduit. Part (e) of claim 1 requires that the plastic product be ejected "into said guide conduit." The plastic product is already in the cavity upon separation. Moreover, the guide conduit must "lead[ ] in a direction sub-stantially perpendicular to said predetermined direction." The cavity created by separating the two mold parts in the device used in the accused process only leads in a direction *parallel* to the predetermined direction. It is not until the product begins moving in a perpendicular direction that it enters the guide conduit. In the CD–94 mold, the plastic product moves perpendicularly into a discharge chute with the assistance of the guide rails. Neither the guide rails nor the discharge chute are created by the separation of the mold parts. Thus, use of the CD–94 mold does not involve a guide conduit as described in the method claim, and no reasonable juror could conclude otherwise.

■ With respect to infringement under the doctrine of equivalents, the parties dispute whether the amendment to claim 1 constituted a narrowing amendment and triggered prosecution history estoppel. The original claims did not require that the guide conduit be "substantially enclosed." Specifically, the relevant June 10, 1983 amendment to claim 1 provided:

(d) Separating the two mold parts by moving, in a direction opposite to the predetermined direction, said mold parts in relation to each other *to create a substantially enclosed guide conduit having contours defined by the regions of the parting surface and the internally positional cavity/ies that are exposed subsequent to separation and leading in a direction substantially perpendicular to said predetermined direction;*

(e) Ejecting the plastic product into [a] *said* guide conduit [which leads in a direction substantially perpendicular to said predetermined direction]; and

(f) Transporting the ejected product through the guide conduit[, the contours of said conduit, substantially being defined by regions of the parting surface and the internally positioned cavity/ies,

which are exposed subsequent to separation].

We agree with the district court that this is a narrowing amendment. The original claim did not require that the guide conduit be substantially enclosed. Turn–Key admits that the amendment narrowed the claim in that respect, but argues that the claim was broadened because the amended claim removed a limitation that substantially all of the contours of the guide conduit be defined by regions of the parting and cavity surfaces. We disagree. There is little meaningful difference between the language "the contours of said guide conduit *substantially being* defined by the regions of the parting surface ..." and "a substantially enclosed guide conduit *having* contours defined by the regions of the parting surface...." Regardless whether the claim was broadened in any way, the claim was narrowed with respect to the new requirement that the guide conduit be substantially enclosed. Prosecution history estoppel was triggered with respect to that limitation. *See generally Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722, 737–40, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002) (noting that narrowing amendments may give rise to a rebuttable presumption of prosecution history estoppel) (citing *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 33, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997)). Other than arguing that the claim was not in fact narrowed, Turn–Key did not present any argument to this court that it overcame any presumption of surrender.

Even if Turn–Key could rebut any presumption of surrender, no reasonable juror could conclude that the accused CD–94 mold operates in the same *way* as the claimed invention. The claims require that the mold parts separate to create a substantially enclosed guide conduit. While the use of guide rails and a discharge chute may perform the same function and achieve the same result as the claimed process, they do so in a different way. Because the way in which the accused device operates is different from the method claimed, the differences are not insubstantial, the claims cannot be infringed under the doctrine of equivalents, and no reasonable juror could conclude otherwise.

II

The district court misconstrued the term "guide conduit." That error, however, was harmless because under the correct claim construction, the CD–94 mold lacks a guide conduit. Without a guide conduit, the defendant users and manufacturers of the CD–94 mold do not practice the claimed method. Therefore, summary judgment of non-infringement, both literally and under the doctrine of equivalents was appropriate.