THE NAUTILUS GROUP, INC. f/k/a
Direct Focus, Inc., a Washington
corporation, Plaintiff,

v.

ICON HEALTH AND FITNESS, INC.,
a Delaware corporation,
Defendant.

Icon Health and Fitness, Inc.,
a Delaware corporation,
Counterclaimant,

v.

The Nautilus Group, Inc., a
Washington corporation,
Counterclaim Defendant

No. C02–2420P.

United States District Court,
W.D. Washington,
at Seattle.

May 16, 2003.

Mark S. Carlson, Paul T Meiklejohn, Dorsey & Whitney LLP, Seattle, WA, for Nautilus Group Inc fka Direct Focus Inc, Plaintiff.

Brent P Lorimer, L Rex Sears, Larry R Laycock, Robyn L Phillips, Sterling A. Brennan, Thomas R. Vuksinick, Workman Nydegger, Salt Lake City, UT, Stephen J Kennedy, Ater Wynne, Seattle, WA, for Weider Health and Fitness Weider Nutrition International Inc Weider Nutrition Group Inc Icon Health & Fitness Inc, Defendant.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

PECHMAN, District Judge.

Plaintiff alleges that Defendant infringes U.S. Patent Nos. 4,620,704 ("the '704 patent") and 4,725,057 ("the '057 patent"). Plaintiff moves for a preliminary injunction, (Dtk. No. 18), and partial summary judgment of literal infringement, (Dkt. No. 26). Defendant moves for summary judgment of non-infringement. (Dkt. No. 14.). In accordance with the infringement analysis outlined below, the Court GRANTS

Defendant's motion for summary judgment of literal non-infringement on Claims 1 and 12 of the '704 patent and Claims 1, 12, 19, and 25 of the '057 patent. Plaintiff's motion for partial summary judgment of literal infringement is DENIED. Because Plaintiff has failed to show a likelihood of success on the merits, Plaintiff's motion for a preliminary injunction is DENIED. Defendant's motion to strike, (Dkt. No. 52), is DENIED as moot because the Court need not consider the contested material.

## BACKGROUND

Plaintiff The Nautilus Group, Inc. ("Nautilus") manufactures the BowFlex exercise machine, which incorporates resilient rods to create a resistance training system. The United States Patent and Trademark Office ("PTO") has awarded Nautilus' resilient rod system a number of patents, including the two patents-in-suit— the '704 patent and the '057 patent. The '057 patent was issued in 1986, and the '704 was issued in 1988. Both patents expire on April 27, 2004. Defendant ICON Health and Fitness ("ICON") recently introduced the CrossBow exercise device, which also uses resilient rod technology. Plaintiff accuses the CrossBow of literally infringing the '057 and '704 patents.

Plaintiff's BowFlex, which is quite similar to the preferred embodiment of the patents at issue, has paired, vertically-mounted rods, with one end of each rod fixed to a base, and the other rod-end free and telescoping upwards. ('057 patent at 1–12.). A cable is attached to the free end of each of the paired rods of the BowFlex, allowing a person to do resistance training (*Id.*) Defendant's CrossBow has horizontally-mounted rods with two free ends. (Phillips Decl. Ex. A at 1–16.). The horizontal rods are rested or attached at their center to the "lat tower" of the CrossBow. (*Id.* at 10.). A cable and pulley system connects to the two free ends of the rods

of the CrossBow, allowing a person to do resistance training. (*Id.* at 4, 10.).

The parties filed cross-motions for summary judgment on infringement/non-infringement. Plaintiff contemporaneously requested a preliminary injunction enjoining Defendant from selling the CrossBow. Ordinarily, this Court would schedule a separate and later *Markman* hearing to construe all disputed claims, and not engage in claim construction at the hearing on a preliminary injunction. However, here the parties represented to the Court that they had narrowed their dispute to a single claim term, and requested that the Court construe the disputed claim term and hear summary judgment on infringement at the same time as the preliminary injunction. This would, as the parties noted, largely resolve the issue of the preliminary injunction by determining if Plaintiff's allegation of infringement had merit.

The principal dispute between the parties involves the term "cantilevered fashion." Plaintiff moves for summary judgment of literal infringement on independent Claim 12 of the '057 patent. The patent claims:

> In an exercising machine: a base, a plurality for [sic] resilient rods mounted on the base in *cantilevered fashion* with one end of each of the rods being free, a flexible cable adapted to be pulled upon by a person using the machine, and means for connecting the cable selectively to one or more of the rods so that the rods to which the cable is connected bend in bow-like fashion and thereby produce a force which opposes the pull on the cable, the magnitude of the force depending at least in part upon the number of rods to which the cable is connected.

('057 patent, claim 12, col. 7, ll. 50–60) (emphasis added). Plaintiff argues that the resilient rods of Defendant's device are

mounted in a cantilevered fashion because at least one end of each rod is free. Defendant moves for summary judgment of non-infringement on Claim 12 of the '057 patent, arguing that the rods of the Cross-Bow have two free ends, and therefore are not mounted in a "cantilevered fashion."

Additionally, Defendant moves for summary judgment of non-infringement on independent Claims 1 and 12 of the '704 patent and independent Claims 1, 19, and 25 of the '057 patent. All of these claims contain the term "cantilevered fashion" to claim systems of mounting rods with one fixed end and one free end. Claim 1 of the '704 patent describes "a plurality of resilient rods mounted on the base in *cantilevered fashion* with one end of each rod being secured in a fixed position and the other end being free." ('704 patent, claim 1, col 7, ll. 30–33) (emphasis added). Claim 12 of the '704 patent 12 describes "a resilient arm means having one end thereof attached to said base and an opposite end extending vertically up from said base in *cantilever fashion*." ('704 patent, claim 12, col. 8, ll. 12–13) (emphasis added). Claim 1 of the '057 patent claims "a base, resilient rod mounted on the base in *cantilevered fashion* with one end of the rod being secured in a fixed position and the other end being free." ('057 patent, claim 1, col. 7, ll. 4–7) (emphasis added). Claim 19 of the '057 patent describes "a plurality of vertically extending rods of resilient material mounted on the post in *cantilevered fashion* with the lower ends of the rods being rigidly affixed to the post and the upper ends of the rods being free." ('057 patent, claim 19, col 8, ll. 16–19) (emphasis added). Finally, Claim 25 of the '057 patent claims "a plurality of vertically extending rods of resilient material mounted on the post in *cantilevered fashion* with the lower ends of the rods being rigidly affixed to the post and the upper ends of the rods being free." ('057 patent, claim 25, col. 8, ll. 45–48) (emphasis added).

## ANALYSIS

The parties submit cross-motions for summary judgment on literal infringement. Summary judgment is not warranted if a material issue of fact exists for trial. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). The underlying facts are viewed in the light most favorable to the party opposing the motion *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Summary judgment will not lie if ... the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548. "[S]ummary judgment is as appropriate in a patent case as in any other." *Avia Group Int'l v. L.A. Gear California, Inc.,* 853 F.2d 1557, 1561 (Fed.Cir.1988).

■ A determination of infringement requires a two-step analysis. *Transclean Corp. v. Bridgewood Services, Inc.,* 290 F.3d 1364, 1370 (Fed.Cir.2002). First, the court determines the scope and meaning of the patent claims asserted. *Id.* Second,

the properly construed claims are compared to the allegedly infringing device. *Id.* Upon comparison, literal infringement exists only if every claim limitation is found in the accused device. *Id.* Step one, claim construction, is an issue of law. *Id.* The infringement analysis in step two is a question of fact. *Id.*

### I. Claim Construction

■■■ In interpreting an asserted claim, the Court looks first to the intrinsic evidence of record—the patent itself, including the claims, the specification and, if in evidence, the prosecution history. *Dow Chem. Co. v. Sumitomo Chem. Co., Ltd.*, 257 F.3d 1364, 1372 (Fed.Cir.2001). The Court initially looks to the claim language itself to define the scope of the patented invention. *Id.* The Court gives claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art. *Id.* Accordingly, a technical term used in a patent claim is interpreted as having the meaning a person of ordinary skill in the field of the invention would understand it to mean. *Id.*

Here the parties and their experts dispute the term "cantilevered." Defendant argues that cantilevered means that one end of each rod is fixed while the other is free, with the fixed end supporting the free end. Plaintiff argues that cantilevered means that one end of the rod supports the other, so that both ends of the rods can be free. Accordingly, this Court must construe the term cantilevered as used in the '057 and '704 patents.

### A. Definition of "Cantilevered"

■■ The parties put forward different dictionary definitions of cantilevered that support each of their respective positions. Dictionaries and technical treatises may be

considered along with the intrinsic evidence when determining the ordinary meaning of claim terms. *Texas Digital Sys. v. Telegenix, Inc.*, 308 F.3d 1193, 1203 (Fed.Cir.2002).

Defendant submits a definition of "cantilever" from the on-line edition of the *McGraw–Hill Dictionary of Scientific and Technical Terms.* "A beam or member securely fixed at one end and hanging free at the other end." (Phillips Decl. Ex. D at 1.). The *McGraw–Hill Dictionary* definition has not changed since 1984. *McGraw–Hill Dictionary of Scientific and Technical Terms* at 244 (3d ed.1984).

Plaintiff puts forward a contrary definition of "cantilever" from the *American Heritage Dictionary* (1986). "1. A projecting beam or other structure supported only at one end. 2. A beam or other member projecting beyond a fulcrum and supported by a balancing member or a downward force behind the fulcrum." (Rawls Decl. Ex. B at 2.)[1] Plaintiff urges the Court to adopt both definitions, but rests its arguments of the merits solely on the second Because the secondary general dictionary definition refers to a rod extending beyond a fulcrum, Plaintiff argues it encompasses a design where both rod-ends are free. In effect, Plaintiff claims that cantilevered means any beam or rod placed or balanced on a fulcrum. (*See* Rawls Decl. at 8.)

The parties dispute how to resolve the conflicting dictionary definitions. The Court does not find, after close examination, that the dueling expert reports on the definitions resolve the matter. Defendant claims that a scientific dictionary definition "trumps" a general dictionary definition. Defendant is correct that the Federal Circuit has cautioned against the use of non-

---

**1.** Plaintiff claims this is a definition of "cantilevered." However, the definition is for the word "cantilever," and the definition itself merely reflects that "-ed" may be added to the word "cantilever."

scientific dictionaries, lest dictionary definitions be converted into technical terms of art having legal, not linguistic significance. *Dow Chem.*, 257 F.3d at 1372. At the same time, the Federal Circuit has "never held that non-scientific dictionaries cannot be used to determine the ordinary meaning of claim language." *Id.* at 1373. However, to the extent that there is a difference between the general and technical definitions of a word, if the word is used in "a technical context to describe a component of a mechanical apparatus," then "a technical dictionary is therefore a better source to inform the meaning of the term to a skilled artisan in this case." *Transclean Corp.*, 290 F.3d at 1375.

"Cantilevered" is used in the '057 and '704 patents in a technical context to describe a component of a mechanical apparatus, and therefore this Court gives priority to the technical dictionary definition. Moreover, the Court is skeptical of the secondary definition from the *American Heritage Dictionary* that Plaintiff proposes as the appropriate claim construction. First, a contemporaneous general dictionary does not include the broad secondary definition. *Webster's Ninth New Collegiate Dictionary* (1986) only contains the first definition listed in the *American Heritage Dictionary*. "A projecting beam or other structure supported only at one end." Second, the Court believes that Plaintiff's proposed reading of the secondary definition is incorrect. The primary general dictionary definition is clearly in accord with the common understanding of a cantilever, such as a diving board or a construction crane, where an extending beam is supported by a counterbalancing force on the other end. Plaintiff's interpretation of the secondary definition of the *American Heritage Dictionary* would reduce the word "cantilever" to mean any rod placed or balanced on a fulcrum. Under Plaintiff's reading, a balance scale would be a cantilever because one end of the bar of the scale supports the other to create a balance. (*See* Rawls Decl. at 8.) However, a scale can be described "a beam that is supported freely in the center." *Webster's Ninth New Collegiate Dictionary* at 1047. The Court concludes that even under the general dictionary definition of cantilever, Plaintiff's proposed claim construction is incorrect. In addition, the Court finds that Plaintiff's proposed construction does not fit with the intrinsic record, as described below.

### B. *Intrinsic Evidence*

The Court looks to the intrinsic record to identify which of the different possible dictionary meanings of the claim terms at issue is most consistent with the use of the words by the inventor. *Texas Digital Sys.*, 308 F.3d at 1203. If more than one dictionary definition is consistent with the use of the words in the intrinsic record, the claim terms may be construed to encompass all such consistent meanings. *Id.* When claims are amenable to more than one construction, they should, when reasonably possible, be interpreted so as to preserve their validity. *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1356 (Fed.Cir.1999), *cert. denied*, 529 U.S. 1037, 120 S.Ct. 1531, 146 L.Ed.2d 346 (2000).

The parties put forward two principal arguments on intrinsic evidence supporting their respective dictionary definitions and proposed claim construction of cantilevered. Defendant argues that language in claims dependent on Claim 12 indicates that one end of the rod mentioned in Claim 12 is fixed (an "antecedent problem"). Plaintiff argues that adopting Defendant's definition leads to redundant language in the claims (a "surplusage problem").

#### 1. *The Antecedent Problem*

Defendant argues that Claim 15, which is dependent on Claim 12, demonstrates

that the term "cantilevered fashion" implies that one end is fixed and the other end is free. Claim 15 claims: "The exercising machine of claim 12 including a guide member for the cable mounted on the base near *the fixed ends* of the rods." ('057 patent, claim 15, col. 8 ll. 1–3) (emphasis added). Defendant points to the language in Claim 15 regarding "the fixed ends of the rod" as intrinsic evidence supporting its proposed definition.

■ When a dependent claim states an invention in relation to an independent claim by adding a new component, it does so by using "a" as an antecedent. Patent & Trademark Office, *Manual of Patent Examining Procedure* § 2173.05(e) (2001). For example, dependent Claim 15 adds a limitation to independent Claim 12 by adding "*a* guide member for the cable mounted on the base near the fixed ends of the rods." The "guide member" is not described in Claim 12, but rather is added by Claim 15. However, when a dependent claim refers back to elements already disclosed in the dependent claim, it uses "the" or "said" as an antecedent. *Id.* Thus, when dependent Claim 15 mentions "*the* cable" used to connect to "*the* rods," it is referring back to "the cable" and "the rods" already disclosed and described by Claim 12.

Because Claim 15 recites "*the* fixed ends of the rods," it is expected that Claim 12 disclosed and described "fixed ends" to the rods. However, "fixed ends" is not recited in Claim 12. Although the actual term "fixed ends" is not mentioned in Claim 12, the term "fixed ends" could be considered to be implicit in "cantilevered fashion," because the definition of cantilever that Defendant puts forward requires "fixed ends." Should Plaintiff's proposed construction be adopted, then it appears that dependent Claim 15 may be invalid as indefinite. *See id.* Claim 15 should not refer to "*the* fixed ends" unless "the fixed

ends" are described in independent Claim 12. If Plaintiff's proposed definition were correct, then the patent should read "a fixed end" or simply "fixed ends." The phrasing of dependent Claim 15 is evidence in support of Defendant's proposed construction.

■ It would be error, as Plaintiff points out, to actually import a limitation of dependent Claim 15 to independent Claim 12. *D.M.I., Inc. v. Deere & Co.*, 755 F.2d 1570, 1573 (Fed.Cir.1985). The prohibition of importing limitations does not bar the Court from concluding that the antecedent problem identified by Defendant supports their proposed claim construction, although it clearly does not decide the matter.

*2. The Surplusage Problem*

■ Courts should not construe a patent claim term such that it renders other terms in the claim mere surplusage or reads such other terms out of the claim. *Texas Instruments v. United States Int'l Trade Comm'n*, 988 F.2d 1165, 1171 (Fed. Cir.1993). However, this canon of construction is not absolute, and patents may in fact be drafted and construed such that surplusage exists. *See Pickholtz v. Rainbow Techs., Inc.*, 284 F.3d 1365, 1373 (Fed. Cir.2002).

Plaintiff argues that Defendant's proposed claim construction would render other terms of the claim superfluous or redundant—a "surplusage" problem. Specifically, if a cantilever has "one fixed end and one free" as Defendant proposes, then the language of Claims 1, 19, and 25 of the '057 patent and Claims 1 and 12 of the '704 patent describing fixed and free ends are arguably redundant. If Defendant's proposed definition is correct, Plaintiff argues, these claims describing the mounting of the rods should only read "in a cantilevered fashion," because all cantile-

vers under Defendant's definition have a fixed and a free end. Defendant admits that its definition could result in redundancy, but argues that Plaintiff's proposed definition also leads to surplusage— "There is no getting around the fact that the claims of the '057 patent are unnecessarily repetitive." (Def.'s Resp. at 10.)

Both of the proposed definitions result in possible surplusage. Defendant's proposed construction does threaten to make those claims that describe a rod's fixed end and free end into surplusage. However, this criticism is partially tempered by the fact that the language of the claims indicates specific modifications to the fixed end. For example, Claims 19 and 25 of the '057 patent describe the lower ends of the rods as being "rigidly affixed to the post." Claim 12 of both the '704 and '057 patents describes one end of the rod "being attached to said base." The additional specification that the fixed end of the rod is "affixed to the post" or "attached to said base" makes the claim language more specific, not redundant. Moreover, Plaintiff's proposed construction results in surplusage as well. Plaintiff's proposed construction would cover all rods mounted on a base, since it does not matter under its definition of cantilever specifically where the rods are mounted, either in the center or at an end. This makes the term "cantilevered" into surplusage because it would mean effectively nothing more than "attached" or "mounted on." The surplusage problem does not compel use of Plaintiff's definition over Defendant's.[2]

## C. Construing "cantilevered fashion"

■ The above analysis leads this Court to conclude that the term "cantile-

ver" is appropriately construed in accordance with Defendant's proposed definition: "A beam or member securely fixed at one end and hanging free at the other end." This proposed definition includes the BowFlex as disclosed in the patent specification. The BowFlex rods and those of the preferred embodiment have one end free, and are attached to a fulcrum near the other end, the tip of which is bolted to the base. The preference for a technical definition in this matter, as well as the considerations raised by the antecedent and surplusage arguments, clearly favors Defendant's proposed construction over Plaintiff's. It is clear to the Court that the claim language and intrinsic evidence describe rods mounted on a base with one fixed end and one free end, and not rods balanced or attached to a base in their center.

## D. Additional Claim Construction

Despite this Court's instructions and the parties' agreement that a single term would be construed in these motions, Defendant has put forward a number of other proposed claim constructions in response and supplemental briefs. These issues are not appropriately raised before the Court at this time. As the Court instructed the parties in its February 26, 2003 phone conference, any remaining claim construction must be presented for a single *Markman* hearing. Moreover, the parties apparently agree that the issue of literal infringement that is raised by the opening briefs and the preliminary injunction is decided through a claim construction of "cantilevered fashion." Because this Court can resolve this matter by constru-

---

2. The primary general dictionary definition—which neither party proposes as the proper construction—is probably the least problematic in terms of creating surplusage. However,

it does not resolve the antecedent problem nor the preference in this case for a technical definition.

ing this single term, it need not reach the other issues raised by Defendant.

## II. Infringement/Non-infringement

■ A claim is literally infringed if each properly construed claim element reads on the accused product or process. *Jeneric/Pentron Inc. v. Dillon Co.*, 205 F.3d 1377, 1382 (Fed.Cir.2000). Accordingly, summary judgment of non-infringement is proper only if no reasonable jury could find that every limitation of the claim in question would be met by the accused product or device.

### A. Literal Infringement

■ There appears to be no dispute between the parties that the claims construction analysis above resolves the issue of literal infringement in Defendant's favor. Both ends of the rods of the Cross-Bow are free. Since the term "cantilevered fashion" means that one end of the resilient rod is fixed and the other is free, the rods of the CrossBow do not literally infringe the disputed claims of the '057 and '704 patents.[3]

As noted above, the language of independent Claims 1 and 12 of the '704 patent and independent Claims 1, 19, and 25 of the '057 patent all describe rods mounted or attached to a base or post in a cantilevered fashion with one end affixed, attached, or secured and the other end free. Plaintiff does not specifically dispute that the precise language of these claims does not literally read on the CrossBow. The Court concludes that no reasonable jury

could find that these claim limitations regarding rods placed in a cantilevered fashion would be met by the CrossBow. Therefore, the Court GRANTS Defendant's motion for summary judgment of literal non-infringement on Claims 1 and 12 of the '704 patent and Claims 1, 19, and 25 of the '057 patent.

The Court reaches the same conclusion regarding the language of Claim 12 of the '057 patent: "resilient rods mounted on the base in cantilevered fashion with one end of each of the rods being free." Because the CrossBow does not have one fixed end, but rather two free ends, it does not literally infringe Claim 12. The fact that the middle of a rod in the CrossBow might be fixed does not raise a genuine issue of fact regarding whether the device literally infringes. Because the claim speaks of rods, not portions of rods, Plaintiff cannot artificially "divide" a single rod of the CrossBow into two separately mounted cantilevers, fixed at the center with the free ends extending out. The claim does not speak of rods mounted in a "double cantilevered fashion."[4] The rods of the CrossBow have no fixed ends, and therefore Defendant's device does not literally infringe Claim 12 of the '057 patent.

### B. Doctrine of Equivalents

■ The doctrine of equivalents enables a patent owner to prove infringement, despite a lack of literal infringement, where the differences between the claimed product and the accused product are insubstantial. *General Mills, Inc. v. Hunt—*

---

**3.** Even if the Court adopted the primary general dictionary definition, a position neither party advances, Plaintiff would not infringe these claims because the CrossBow rods are not supported only at one end.

**4.** Even if the Court were to construe the term "cantilevered fashion" in accordance with the primary general dictionary definition, Defendant would not literally infringe Claim 12 because the rods are not supported only at one end, but rather are supported in the center, or arguably at both ends.

*Wesson, Inc.,* 103 F.3d 978, 984 (Fed.Cir. 1997). An infringement determination under the doctrine of equivalents is a question of fact. *Id.*

Neither party specifically moves for summary judgment under the doctrine of equivalents in their opening briefs. However, in an abundance of caution, both parties briefly argue the doctrine of equivalents in response and reply submissions as grounds for why summary judgment on infringement on all claims, both literal and under equivalents, would be inappropriate. Because this issue was not raised and argued in the opening briefs, the Court will not rule on the matter. Moreover, the Court believes that the record is not sufficiently developed to determine on summary judgment the question of infringement under equivalents.

### III. *Preliminary Injunction*

 To obtain a preliminary injunction in a patent case pursuant to 35 U.S.C. § 283, the Court considers a party's showing on four factors. (1) reasonable likelihood of success on the merits, (2) irreparable harm, (3) the balance of hardships, (4) the impact of the injunction on the public interest. *T.J. Smith & Nephew Ltd. v. Consolidated Medical Equip., Inc.,* 821 F.2d 646, 647 (Fed.Cir.1987). If Defendant raises a "substantial question" regarding infringement, then the preliminary injunction should not issue. *Genentech, Inc. v. Novo Nordisk A/S,* 108 F.3d 1361, 1364 (Fed.Cir.1997), *cert. denied,* 522 U.S. 963, 118 S.Ct. 397, 139 L.Ed.2d 310 (1997).

Plaintiff's only argument for likelihood of success on the merits is that the Cross-Bow infringes Claim 12 of the '057 patent. However, Defendant has prevailed on summary judgment on non-infringement on this claim. Consequently, Plaintiff has failed to show any likelihood of success on the merits in this action. Because Plaintiff has made no showing of a likelihood of success, as a matter of law the motion for a preliminary injunction must be denied. *Genentech,* 108 F.3d at 1364; *see also Atlas Powder Co. v. Ireco Chemicals,* 773 F.2d 1230, 1234 (Fed.Cir.1985) (balance of hardships is weighed in light of the strength of the showing of likelihood of success on the merits). Plaintiff's motion for a preliminary injunction is DENIED.

### CONCLUSION

In accordance with the infringement analysis outlined above, the Court GRANTS Defendant's motion for summary judgment of literal non-infringement on Claims 1 and 12 of the '704 patent and Claims 1, 12, 19, and 25 of the '057 patent. Plaintiff's motion for partial summary judgment of literal infringement is DENIED. Because Plaintiff has failed to show a likelihood of success on the merits, Plaintiff's motion for a preliminary injunction is DENIED. Defendant's motion to strike is DENIED as moot because the Court need not consider the contested material.

The Clerk is directed to send copies of this order to all counsel of record.