**OUTLAST TECHNOLOGIES, IN-CORPORATED, a Colorado corporation, Plaintiff,**

v.

**FRISBY TECHNOLOGIES, INCOR-PORATED, a Delaware corporation, Defendant.**

No. CIV.01–F–1882CBS BNB.

United States District Court, D. Colorado.

Jan. 14, 2004.

Andrew Hartman, Craig A. Neugeboren, James P. Brogan, Cooley, Godward, LLP, Broomfield, CO, for Plaintiff.

Brian G. Eberle, Dennis Jeremy Herman, Sherman & Howard, United States District Court, Denver, CO, for Defendant.

## ORDER ON CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT

BOLAND, United States Magistrate Judge.

This is a patent infringement case brought by Outlast Technologies, Inc. ("Outlast"), asserting that the defendant, Frisby Technologies, Inc. ("Frisby"), is infringing Outlast's Patent No. 5,366,801 (the "'801 Patent"). The '801 Patent claims inventions concerning a coating containing microencapsulated phase change materials adapted to be applied to fabrics and fibers in order to enhance the thermal characteristics of the material. '801 Patent, at Abstract; col.1, lines 39–43; and col.5, lines 35–39.

There currently are two motions for partial summary judgment before me for determination:

(1) **Defendant's Motion Under Fed. R.Civ.P. 56 for Partial Summary Judgment on Non–Infringement** ("Frisby's Infringement Motion"), filed January 25, 2002; and

(2) **Plaintiff's Motion Under F.R.C.P. 56 for Partial Summary Judgment That Defendant Is Infringing U.S. Patent No. 5,366,801** ("Outlast's Infringement Motion"), filed August 26, 2002.

This case was stayed by order of the district judge entered January 29, 2003, based upon the Notice of Automatic Stay Due to Defendant's Bankruptcy Filing. Subsequently, the United States Bankruptcy Court for the Middle District of North Carolina modified its stay order "to allow the United States District Court for the District of Colorado to move forward" with this action "through necessary rulings as it relates to the pending cross motions for summary judgment" and allowing this court "to enter such orders as it deems necessary with respect to those motions." Notice of Order Modifying the 11 U.S.C. § 362 Stay, filed July 18, 2003, at Exh.A. The scope of the modification of the stay order has been further clarified by the parties in their Joint Status Report filed October 31, 2003, as follows:

On January 25, 2002, Frisby filed a summary judgment motion styled *Defendant's Motion Under Fed.R.Civ.P. 56 for Partial Summary Judgment of Non–Infringement* ("Frisby's Infringement Motion"). On October 26, 2002, Outlast filed two summary Judgment motions: (1) *Plaintiff's Motion Under Fed. R. Civ. p. 56 for Partial Summary Judgment That Defendant is Infringing U.S. Patent No. 5,366,801* ("Outlast's Infringement Motion"); and (2) *Motion Under F.R.C.P. 56 for Partial Summary Judgment That Outlast Has Neither Tortiously Interfered With Frisby's Business Relations Nor Committed Trade Libel* (the "Counterclaims Motion").

Based on the language of the Bankruptcy Order and the hearing held by the Bankruptcy Court on May 14, 2003, the parties understand that the Bankruptcy Order only modified the 11 U.S.C. § 362 Stay with respect to two of the three pending summary judgment motions. Specifically, the parties understand that the stay has only been lifted with respect to the summary judgment motions that address infringement issues: Frisby's Infringement Motion and Outlast's Infringement Motion.... The Counterclaims Motion is still subject to the § 362 Stay.

*Id.* at pp.1–2.

In addition, on July 25, 2003, the parties filed their Request and Consent of the Parties to Referral of Dispositive Motions to Magistrate Judge for Final Determination Pursuant to D.C.COLO.LCivR 72.3. That local rule provides:

1. The local rule refers to 28 U.S.C. § 636(c)(1), which provides in relevant part: Upon the consent of the parties, a full-time United States magistrate judge ... may conduct any or all proceedings in a jury or

Pursuant to 28 U.S.C. § 636(c)(1) and subject to the provisions of this rule, all full-time magistrate judges in the District of Colorado are specifically designated to make final determination of dispositive motions that have been pending for more than six months. Dispositive motions include motions to dismiss, motions for transfer or for change of venue, motions to remand, motions for summary judgment, and motions for partial summary judgment.

*Id.* at 72.3A.[1] The district judge granted the request to refer the dispositive motions to a magistrate judge by an order entered July 29, 2003, *see* D.C.COLO.LCivR 72.3B, and the motions were assigned to me by random draw. Notice By Clerk, filed July 29, 2003; *see* D.C. COLO.LCivR 72.3D.

■ Although not specified in the Complaint, Outlast claims literal infringement of claims 1 through 3 and 6 of the '801 Patent. *See* Outlast's Infringement Motion, at pp.6–8 ("The evidence in this case ... shows that Frisby is infringing at least claims 1–3 and 6 of the '801 patent"). Claims 2, 3, and 6 depend on claim 1. Accordingly, if Frisby is not infringing claim 1 of the '801 Patent, it is not infringing the dependent claims. *Jeneric/Pentron, Inc. v. Dillon Co., Inc.*, 205 F.3d 1377, 1383 (Fed.Cir.2000)(" '[D]ependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed' ").

Claim 1 of the '801 Patent claims as an invention the following:

1. An article having enhanced thermal storage properties and repeatability of thermal response consisting essentially of:

nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves.

*Id.* (emphasis added).

a base material selected from the group consisting of fabrics and fibers, and

a coating covering at least a portion of the surface of said base material and comprising:

a polymeric binder, and

a plurality of microcapsules dispersed throughout and submerged within said binder on the surface of said base material so as to be surrounded thereby, said microcapsules containing a temperature stabilizing means selected from the group consisting of phase change materials and plastic crystals, whereby the article exhibits enhanced thermal stability when subjected to heat or cold.

'801 Patent, col.5, lines 35–50.

In its motion for partial summary judgment, Frisby argues that it does not infringe the '801 Patent as a matter of law because the patentees disclaimed coverage of microcapsules applied to fabric through impregnation, and it is undisputed that Frisby's accused products are impregnated fabrics. Outlast argues in its motion for partial summary judgment that Frisby's products literally infringe the '801 Patent because that patent covers the use of microencapsulated phase change material in fibers and fabrics and that the patentees did not disclaim during the prosecution of the '801 Patent coverage of all impregnated fabrics, but only those impregnated fabrics that are designed to facilitate microcapsule rupture.

For the reasons discussed below, I hereby GRANT Frisby's Infringement Motion and DENY Outlast's Infringement Motion. Partial summary judgment of non-infringement shall enter in favor of Frisby and against Outlast based on my determination that Frisby is not infringing the '801 Patent, as a matter of law.

## I. The Propriety of Summary Judgment

The parties agree that this is an appropriate case for the entry of summary judgment on the issue of infringement. Specifically, Outlast states that "[b]ecause there is no dispute concerning the structure of Frisby's ComforTemp non-woven fabrics, the issue of infringement in this case collapses into an issue of claim construction (i.e., an issue of law for determination by this Court)." Outlast's Infringement Motion, at p.1. In addition, Outlast states in its Motion for Preliminary Injunction and Memorandum of Law In Support Thereof, filed December 17, 2001:

This case is somewhat unique in the patent field, because there is no dispute concerning the structure of the Frisby ComforTemp non-woven fabrics, and Frisby does not contest the validity of the '801 patent. That means that the issue of infringement in this case collapses into an issue of claim construction. . . .

*Id.* at p.1.

Similarly, according to Frisby:

In this case there does not appear to be a dispute with respect to relevant facts regarding the accused products, Frisby ComforTemp nonwovens. Plaintiff so states at page 1 of its motion for a preliminary injunction. In that unusual circumstance, literal infringement collapses into claim construction and is amenable to summary judgment.

Frisby's Infringement Motion, at p.8.

■ It is true, of course, that the federal rules of civil procedure are applied in patent cases no differently from their application in any other type of case. *SRI Int'l v. Matsushita Electric Corp. of America,* 775 F.2d 1107, 1116 (Fed.Cir.1985). "Hence, summary judgment under Rule 56, Fed.R.Civ.P., is entirely appropriate, in

a patent as in any other case, where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Id.*

Rule 56(c), Fed.R.Civ.P., provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), *General Mills, Inc. v. Hunt–Wesson, Inc.,* 103 F.3d 978, 980 (Fed.Cir.1997). In ruling on a motion for summary judgment, it is the court's obligation to view the facts in the light most favorable to the party opposing the motion and to allow that party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *General Mills,* 103 F.3d at 980.

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the absence of genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party opposing the motion is then required to go beyond the pleadings and through reference to evidence designate specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

It is undisputed that the structure of Frisby's ComforTemp non-woven fabrics, the accused products, is as follows:

1. Frisby ComforTemp nonwovens ... are impregnated fabrics.

2. Frisby ComforTemp nonwovens are made by impregnating a nonwoven fabric starting material.

3. Frisby ComforTemp nonwovens are made by applying a mixture of polymeric binder and microcapsules of phase change material to the starting nonwoven fabric, and then passing the fabric through rollers to drive the mixture into the fabric.

4. Frisby ComforTemp nonwovens have binder distributed throughout the thickness of the fabric in interstices within the fabric.

5. In the '801 Patent in suit, the terms "base material" and "substrate" are used synonymously.

Frisby's Infringement Motion, at pp.5–6 (Frisby's Statement of Undisputed Material Facts)(internal citations to the record omitted); Brief of Plaintiff ... (2) In Opposition to Defendant's Motion Under Rule 56 for Partial Summary Judgment of Non–Infringement, filed February 14, 2002, at p.20 (admitting the relevant portions of Frisby's Statement of Undisputed Material Facts). Or, as Outlast has explained:

Frisby's ComforTemp line of non-woven fabrics are formed by encapsulating [phase change materials] within microcapsules, dispersing the microcapsules within a polymer binder to form a coating, and applying the coating to a nonwoven fabric base material. The coating, which is applied to the non-woven fabric substrate via a submersion process, penetrates the interstices of the fabric and adheres to the surface of the individual fibers that comprise the fabric. When cured, the coating completely surrounds the microcapsules and serves to protect the microcapsules from the physical stresses associated with normal wear and tear and washings.

Plaintiff's Motion for Preliminary Injunction and Memorandum of Law In Support Thereof, at p.5.

■ As the parties stress repeatedly in their various briefs, there is no dispute about the structure of Frisby's Comfor-Temp nonwoven materials. The dispute here is over the proper construction of the patent claims. Under these circumstances, "the question of literal infringement collapses into claim construction and is amenable to summary judgment." *General Mills*, 103 F.3d at 983; *Johnson Worldwide Asso., Inc. v. Zebco Corp.*, 175 F.3d 985, 988 (Fed.Cir.1999).

## II. The Law of Claim Construction

■ A literal patent infringement analysis involves two steps: (1) the proper construction of the assertedly infringed claim, and (2) a determination as to whether the accused method or product infringes the asserted claim as properly construed. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581–82 (Fed.Cir.1996). "The construction of claims is simply a way of elaborating the normally terse claim language in order to understand and explain, but not to change, the scope of the claims." *Embrex, Inc. v. Service Engineering Corp.*, 216 F.3d 1343, 1347 (Fed.Cir.2000)(internal quotations and citations omitted). Claim construction is a matter of law for the court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).

■ There are numerous sources that a court may utilize for guidance in determining the proper construction of a patent claim. These sources include both intrinsic evidence (*e.g.,* the patent specification and file history) and extrinsic evidence (*e.g.,* expert testimony). *Vitronics*, 90 F.3d at 1582. However, the analytical focus in construing claims is on the language

of the claims themselves because "it is that language that the patentee chose to use to 'particularly point out and distinctly claim the subject matter which the patentee regards as his invention.'" *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1201–02 (Fed.Cir.2002)(quoting *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed.Cir.2001), and 35 U.S.C. § 112). Thus, there is a "heavy presumption" that the claim terms carry the ordinary and customary meanings that would be attributed to them by one skilled in the relevant art at the time of the invention. *Rambus Inc. v. Infineon Technologies Ag*, 318 F.3d 1081, 1088 (Fed. Cir.2003). "Moreover, unless compelled otherwise, a court will give a claim term the full range of its ordinary meaning as understood by persons skilled in the relevant art." *Texas Digital*, 308 F.3d at 1202.

The Federal Circuit Court of Appeals has recognized two situations, however, where a sufficient reason exists to require the entry of a definition of a claim term other than its ordinary and accustomed meaning:

> The first arises if the patentee has chosen to be his or her own lexicographer by clearly setting forth an explicit definition for a claim term.... The second is where the term or terms chosen by the patentee so deprive the claim of clarity that there is no means by which the scope of the claim may be ascertained for the language used.

*Johnson Worldwide*, 175 F.3d at 990. Consequently, the intrinsic record "must be examined in every case to determine whether the presumption of ordinary and customary meaning is rebutted." *Texas Digital*, 308 F.3d at 1204. As the Federal Circuit noted:

> In short, the presumption in favor of a dictionary definition will be overcome

where the patentee, acting as his or her own lexicographer, has clearly set forth an explicit definition of the term different from its ordinary meaning.... Further, the presumption also will be rebutted if the inventor has disavowed or disclaimed scope of coverage, by using words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope.

*Id. Accord Rambus,* 318 F.3d at 1088 (noting that "to help determine the proper construction of a patent claim, a construing court consults the written description and the prosecution history").

This last circumstance—where an "inventor has disavowed or disclaimed scope of coverage, by using words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope"—is termed prosecution disclaimer. Prosecution disclaimer is a well established doctrine and fundamental precept in claim construction jurisprudence which "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Engineering, Inc. v. Raytek Corp.,* 334 F.3d 1314, 1323 (Fed.Cir.2003).

In most cases, a review of the intrinsic evidence alone will be sufficient to resolve any ambiguity in a disputed claim term. Consequently:

In those cases where the public record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper. The claims, specification, and file history, rather than extrinsic evidence, constitute the public record of the patentee's claim, a record on which the public is entitled to rely.

*Vitronics,* 90 F.3d at 1583.

Finally, in *Omega Engineering,* the Federal Circuit noted that "[a]s a basic principle of claim interpretation, prosecu-

tion disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." 334 F.3d at 1324. The court went on to hold, however, that in order to balance the conflicting interests of (i) public notice and (ii) the right of patentees to broad patent coverage, prosecution disclaimer will be found only where the patentee's statements in the prosecution history "unequivocally disavow[ ] a certain meaning" and are both "clear and unmistakable." *Id.* at 1325–26.

### III. Claim 1 and Outlast's Prosecution Disclaimer

It is undisputed that Frisby's Comfor-Temp nonwovens, the accused products, "are made by impregnating a nonwoven fabric starting material." *See* p.6, *supra.* In view of this fact, Frisby argues that its products cannot infringe the '801 Patent, as a matter of law, because during prosecution of the patent the patentee disclaimed from the scope of coverage of the patent fabric impregnated with phase change microcapsules. Brief In Support of Defendant's Motion Under Rule 56 for Partial Summary Judgment of Non–Infringement, filed January 25, 2003, at p.12. I agree.

There are three prior art patents relevant to my determination:

(1) The first is Bryant, which disclosed microspheres filled with phase change material or plastic crystal incorporated into a fiber. Declaration of Craig A. Neugeboren In Support of Plaintiff's Motion for Preliminary Injunction (the "Neugeboren Decl."), filed December 17, 2001, at Exh.1, Tab 3, p.2.

(2) The second is Doree, which describes coating a substrate with microcapsules dispersed in a binder resin and lami-

nating this layer to the surface of a fabric. *Id.*

(3) The third is Woo. "Woo discloses a fabric impregnated with microcapsules. The microcapsules are mixed with a binder and sprayed on the fabric. . . . The fabric is then rolled between two heated rollers to effect uniform impregnation. . . ." *Id.* at Exh.1, Tab 7, p.3.

Claim 1 of the '801 Patent derives from application claim 5. Application claim 5 claimed as an invention the following:

> A fabric having enhanced thermal storage properties and repeatability of thermal response and comprising:
>
> a base material, and
>
> a coating covering at least a portion of said base material and comprising:
>
> a binder, and
>
> a plurality of microcapsules integral with and dispersed throughout said binder, said microcapsules containing a temperature stabilizing means, whereby the fabric exhibits enhanced thermal stability when subjected to heat or cold.

*Id.* at Exh. 1, Tab 1, p.13.

The examiner rejected application claim 5 as obvious, stating:

> Claims 1–20 are rejected under 35 U.S.C. § 103 as being unpatentable over Bryant et al. taken with Doree et al. Bryant et al. disclose microspheres filled with a phase change material or plastic crystal incorporated into a fiber. . . . Bryant et al. do not specifically disclose applying the filled microspheres to the surface of a fabric with binder. However, techniques of applying additives to fabrics in such a manner are known in the art. Doree et al. for example describe coating a substrate with microcapsules dispersed in a binder resin . . . and laminating this layer to the surface of a fabric. . . . It would therefore have been obvious to employ the method of

Doree et al. in order to modify the properties of a fabric using microspheres of Bryant et al.

*Id.* at Exh.1, Tab 3, p.3.

To address the examiner's rejection, application claim 5 was amended to claim:

> 5. (Amended) An article such as a fabric or fiber having enhanced thermal storage properties and repeatability of thermal response consisting essentially of:
>
> a base material, and
>
> a coating covering at least a portion of said base material and comprising:
>
> a binder, and
>
> a plurality of microcapsules dispersed throughout and submerged within said binder so as to be surrounded thereby, said microcapsules containing a temperature stabilizing means, whereby the article exhibits enhanced thermal stability when subjected to heat or cold.

*Id.* at Exh.1, Tab 6, p.3.

The patentees explained in their remarks that the invention claimed through application claim 5 (amended) was not covered by the prior art for the following reasons:

> [I]t is clear that the teachings of Doree cannot be used to render the present invention obvious. A number of significant structural and functional differences exist. In Doree, the microcapsules are intentionally positioned within the binder so that they protrude above the surface of the binder. This is done in order to release the contents of the microcapsules upon the intentional rupture thereof.

*Id.* at Exh.1, Tab 6, p.13. The invention claimed in application claim 5 (amended) differed because the microcapsules are not intended to rupture; to the contrary, it is a purpose of the invention to prevent the

rupture of the microcapsules which contain the phase change material. The patentees explained this difference as follows:

> The present invention takes this into account and the microcapsules are completely covered in the binder. Thus, the phase change material, when in the liquid state, will be less prone to leak out of the fabric in the event of capsule rupture as it is, in fact, protected by a dual wall system, i.e., the capsule wall itself and the second wall formed by the surrounding binder.
>
> \*     \*     \*     \*     \*.     \*
>
> As was discussed with the Examiner at the interview, it would appear that a more definitive recitation that the microcapsules are surroundingly embedded within the binder and are applied directly to the substrate in liquid form would appear to present a patentable combination of features over the prior art.

*Id.* at Exh.1, Tab 6, pp14–15.

The first amendment to application claim 5 thus distinguished the claimed invention from the prior art by noting that the microcapsules in the claimed invention would be protected from rupture by completely surrounding them in the binder. The claimed invention was different from Bryant combined with Doree, which did not protect the microcapsules from rupture and did not completely surround the microcapsules in the binder.

The examiner rejected application claim 5 (amended), finding:

> Claims 1–28 are rejected under 35 U.S.C. § 103 as being unpatentable over Bryant et al. taken with Woo.
>
> Bryant et al. disclose microspheres filled with a phase change material or a plastic crystal incorporated into a fiber. The fiber thus formed can be used to manufacture fabrics having enhanced thermal properties. Bryant et al. do not specifically disclose applying the filled microspheres to the surface of a fabric with a binder.
>
> Woo discloses a fabric impregnated with microcapsules. The microcapsules are mixed with a binder and sprayed on the fabric.... The fabric is then rolled between two heated rollers to effect uniform impregnation....
>
> It would have been obvious to employ the method disclosed by Woo in order to impregnate microencapsulated phase change materials into a fabric. Bryant et al. disclose generally the benefit of incorporating such materials into a fabric. Woo discloses a means of uniformly impregnating microencapsulated materials into a fabric.

*Id.* at Exh.1, Tab 7, p3.

The examiner rejected application claim 5 (amended) based on the combination of microcapsules applied to the fabric by impregnation. To address this issue, the patentees made a second amendment to application claim 5, as follows:

> 5. (Twice Amended) An article such as a fabric or fiber having enhanced thermal storage properties and repeatability of thermal storage properties and repeatability of thermal response consisting essentially of:
>
> a base material, and
>
> a coating covering at least a portion of the surface of said base material and comprising:
>
> a binder, and
>
> a plurality of microcapsules dispersed throughout and submerged within said binder on the surface of said base material so as to be surrounded thereby, said microcapsules containing a temperature stabilizing means, whereby the article

exhibits enhanced thermal stability when subjected to heat or cold.

*Id.* at Exh.1, Tab 9, p.2.

The significance of this amendment was explained by the patentees as follows:

Pursuant to the discussion that transpired with respect to the claims, independent claims 1, 5, 13 and 17 have now been amended to define over the newly cited Woo reference and in particular now recite that the coating is applied to and remains on the surface of the substrate. . . .

The Examiner contends that it would have been obvious to employ the method disclosed by Woo in order to impregnate the microencapsulated phase change materials into a fabric. . . .

As was discussed during the interview, the patent to Woo discloses a fabric and a method of coating a fabric with micron size bubbles in the form of fragile capsules within the interstices between the strands inside the body of a fabric. The capsules are sprayed on to the fabric in combination with a liquid binder. The fabric is then put through a set of rollers. The essence of the invention is that the micron size bubbles or microcapsules are bonded completely within the interior of the fabric. . . . The process as taught by Woo attempts to provide a fabric which is normal in appearance. The foregoing is accomplished by positioning all of the capsules within the interstices of the fabric with the surface of the fabric being free of microcapsules and binder to provide an appearance and texture which is smooth and capsule free.

In contrast, the present invention is a coating that is applied to the surface of the substrate (i.e., the fabric or the fiber) and is intended to remain on the surface.

\*       \*       \*       \*       \*       \*

Thus, in view of the foregoing it will be seen that the Woo patent does not in any way teach or even remotely suggest that the binder may be thicker than the diameter of the microcapsules and further, does not in any way suggest that the beneficial results are obtainable by allowing the binder and the microcapsules to remain on the surface of the substrate.

*Id.* at Exh.1, Tab 9, p.4–6.

The examiner was satisfied that the second amendment to application claim 5 addressed the issue of the combination of microcapsules applied to the fabric by impregnation, and he allowed application claim 5 as twice amended, *id.* at Exh.1, Tab10, p.1, with minor changes. *See id.* at Exh.1, Tab 9, p.2.

■ Outlast argues that what was disclaimed following the examiner's second disallowance was not application by impregnation, but something much narrower. According to Outlast:

[A]ll impregnated products are not outside the scope of the '801 patent, as Frisby suggests. It is only those impregnated fabrics that have been designed to facilitate microcapsule rupture that have been affirmatively disclaimed.

Brief of Plaintiff . . . (2) In Opposition to Defendant's Motion Under Rule 56 for Partial Summary Judgment of Non–Infringement, filed February 2, 2002, at p.14 (internal citations to the record omitted). I do not agree.

The patentees addressed the issue of the rupture of the microcapsules and leakage of the phase change material in connection with the first amendment of application claim 5. They carefully explained that rupture of the capsules as contemplated by Bryant taken with Doree no longer was an issue. The current invention was distin-

guished from Doree by the fact that in the current invention the fabric is protected against leaking phase change material by the use of a dual wall system—the capsule wall itself and a second wall formed by the surrounding binder. Rupture of the microcapsules and leaking phase change material was completely addressed by the first amendment to application claim 5 and, contrary to Outlast's argument, was not the basis for the examiner's second rejection of the claim.

The examiner could not have been clearer in his rejection of application claim 5 (amended): "[i]t would have been obvious to employ the method disclosed by Woo in order to impregnate microencapsulated phase change materials into a fabric." Neugeboren Decl., Exh.1, Tab 7, p.3. Nor is there any reasonable doubt about what the patentees disclaimed in order to overcome this objection by the examiner: "[i]n contrast [to Woo], the present invention is a coating that is applied to the surface or the substrate (i.e., the fabric or the fiber) and is intended to remain on the surface." *Id.* at Exh. 1, Tab 9, p.6.

The coating is applied to the surface, either of the fabric itself or of the fibers which compose the fabric, but the coating is not impregnated into the fabric.

It is true, as Outlast argues, that the patentees in their "Remarks" in connection with the second amendment of application claim 5 stated that Woo is distinguished from the present invention on the following grounds:

In Woo, the invention provides microcapsules that are intended to rupture and to release their contents. In contrast, the present invention provides microcapsules that are designed so as not to rupture and further, are placed within the binder matrix so that even in the event of breakage of the capsule wall, the phase change material filling re-

mains in place. Furthermore, the Woo patent places the fragrance containing capsules within the interstitial spaces of the fabric, away from the surface of the fabric in a thin binder layer in order to preserve the texture and appearance of the fabric, presumably so as not to otherwise affect its salability. In contrast, in the present invention, the microcapsules are placed on the surface of the substrate as well as within the interstices of the substrate, should there be any such interstices. . . . Again, the present invention provides a binder layer that is thick enough to surroundingly embed the microcapsules with the binder, the texture and appearance of the substrate not being of a primary concern in comparison with the disclosure of Woo.

*Id.* at Exh.1, Tab 9, pp.7–8,

The patentees' additional statements in the amendment form cannot alter the clear effect of the prosecution history, however. Prosecution history disclaimer is substantive, focusing on the "subject matter the patentee relinquished or disclaimed." *Abbott Laboratories v. Torpharm, Inc.,* 300 F.3d 1367, 1372 (Fed.Cir.2002). Here, as in *Rheox, Inc. v. Entact, Inc.,* 276 F.3d 1319, 1324 (Fed.Cir.2002), " 'the simple chronology of the prosecution history' " leads inexorably to the conclusion that the second amendment to application claim 5 narrowed the scope of that claim to exclude application of the microcapsules by impregnation. The issue of microcapsule rupture was dealt with through the first amendment to application claim 5. Thereafter, the examiner found that application of microcapsules by impregnation was obvious under Woo, and the patentees were required following the second rejection to give up application by impregnation to gain patentability.

The law is well-settled that "[c]laims may not be construed one way in order to

obtain their allowance and in a different way against accused infringers." *Southwall Technologies, Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1576 (Fed.Cir.1995). Put another way, "[a] patentee is not free to retrade or renege on a deal struck with the PTO during patent prosecution." *Sage Products, Inc. v. Devon Industries, Inc.,* 126 F.3d 1420, 1432 (Fed.Cir.1997). Consequently, because the patentee surrendered application of the microcapsules by impregnation in order to obtain patentability, Outlast cannot recapture that surrendered scope through claim construction here.

Finally, Outlast argues that "where the terms used within a claim are clear and unambiguous, neither the written description nor the file history of a patent can be used to trump, modify, or vary the language that is used within the claims," citing *E.I. du Pont de Nemours & Co. v. Phillips Petroleum,* 849 F.2d 1430, 1433 (Fed.Cir.1988). Brief of Plaintiff ... (2) In Opposition to Defendant's Motion Under Rule 56 for Partial Summary Judgment of Non–Infringement, filed February 2, 2002, at p.3. Frisby argues the opposite: "Contrary to plaintiff's assertion..., prosecution history disclaimer absolutely trumps the plain meaning of the words of a claim," citing *Omega Engineering,* 334 F.3d at 1323. Defendant's Supplemental Memorandum of Law, filed October 24, 2003, at p.2.

In the *Johnson Worldwide* case, the Federal Circuit held:

> In order to overcome [the] heavy presumption in favor of the ordinary meaning of claim language, it is clear that a party wishing to use statements in the written description to confine or otherwise affect a patent's scope must, at the very least, point to a term or terms in the claim with which to draw in those statements. That is, claim terms cannot

be narrowed by reference to the written description or prosecution history unless the language of the claims invites reference to those sources. In other words, there must be a textual reference in the actual language of the claim with which to associate a proffered claim construction.

175 F.3d at 989–90 (internal citations and quotations omitted). *Accord Texas Digital,* 308 F.3d at 1204 (holding that "[c]onsulting the written description and prosecution history as a threshold step in the claim construction process, before any effort is made to discern the ordinary and customary meanings attributed to the words themselves, invites a violation of our precedent counseling against importing limitations into the claims").

In this case, the language of Claim 1 requires that the polymeric binder be "on the surface of said base material...." '801 Patent, col.5, lines 44–45. I may consult the specifications and the prosecution history to help determine the proper construction of this claim language. *Rambus,* 318 F.3d at 1088.

Where reference to the prosecution history is proper, as it is in this case, the Federal Circuit has stated in the clearest possible terms that "[t]he doctrine of prosecution disclaimer is well established ..., precluding patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Engineering,* 334 F.3d at 1323. Where, as here, the patentee has unequivocally disavowed a certain meaning to obtain his patent, "the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender." *Id.* at 1324.

In this case, the prosecution history establishes that the patentee disclaimed application of the microcapsules by impregnation. Fabric impregnated with binder

containing phase change microcapsules was found to be obvious by the examiner and was eliminated from the coverage of the patent by the second amendment to application claim 5. In addition, it is undisputed that Frisby's accused products are made by impregnating a nonwoven fabric starting material.

Claim 1 of the '801 Patent does not read on the accused Frisby ComforTemp nonwovens because the '801 Patent does not cover impregnated fabric. Consequently, the accused Frisby products do not infringe the '801 Patent, and Frisby is entitled to judgment of non-infringement as a matter of law.

IT IS ORDERED that Frisby's Infringement Motion is GRANTED. Partial summary judgment shall enter in favor of Frisby and against Outlast finding that the Frisby ComforTemp nonwovens do not infringe the '801 Patent, as a matter of law.

IT IS FURTHER ORDERED that Outlast's Infringement Motion is DENIED.